DECISION
This matter is before the Court for decision on the Defendant's motion to reduce his sentence of sixty (60) years, thirty (30) years to serve with the balance of thirty (30) years suspended, on a charge of assault with a dangerous weapon in a dwelling house with the intent to commit murder.
 FACTS TRAVEL
The original plea agreement, entered into on January 10, 2006, provided for a cap of sixty years with thirty-five to serve. Prior to the sentencing, the Defendant's trial attorneys submitted a sentencing memorandum which, in pertinent part, noted that the Court had had the "opportunity to review the Defendant's various medical records." (Sentencing Mem. 5.) Trial counsel specifically referenced that the records "unequivocally show that the Defendant has been medicated for a bi-polar disorder and has seen doctors on and off since the 1980's." (Sentencing Mem. 5.) Additionally, the records, then available, revealed hospitalizations at the Veterans Administration and Butler Hospital for Defendant's suicide attempts.
At the sentencing, which occurred on June 15, 2006, this Court stated, after the Defendant exercised his right of allocution, that the Court respected the Defendant's "entreaty for forgiveness, but the forgiveness emanates from those you have victimized and not [the Court]. It remains incomprehensible to [the Court] what would impel a man to conspire to kill *Page 2 
the mother of his child and consign that child to a motherless upbringing." (Tr. 40-41.) The Court additionally concluded that the Defendant's "odious behavior" was not the result of an "uncontrollable rage or outburst" but rather, the "product of a nefarious and detailed plot." (Tr. 41.) Finally, the Court referenced the Defendant's "mental illness" as a mitigating factor.Id.
 LAW ANALYSIS
The Defendant's successor counsel has now filed the within motion to reduce the Defendant's sentence, which motion is grounded substantially upon Defendant's claimed psychiatric disorder.
In support of his motion, the Defendant has submitted for analysis to the Court and defense expert, Dr. Harold J. Bursztajn, the following materials and exhibits: (1) Personal history letter authored by the Defendant in April 2009 addressed to Dr. Bursztajn; (2) Letter authored by Attorney Kevin Dwyer to the Defendant, dated May 12, 2008 (Def.'s Ex. I); (3) Letter to the Defendant from the Department of Veterans Affairs, dated April 13, 2005, denying Defendant's claim for service connected compensation for post-traumatic headaches (Def.'s Ex. II); (4) Medical records from the Womack Army Hospital relating to Defendant's Admission for a closed head injury from April 7, 1986 to April 10, 1986 (Def.'s Ex. III); (5) Records of Dr. Rafael Gracia and associated consultants at the Providence Veterans Administration from 2003-04 (Def.'s Ex. IV); (6) Records of Dr. Srecko Pogacar from 2003-04 (Def.'s Ex. V); (7) Records of admission to Butler Hospital in October, 2003 (Def.'s Ex. VI); (8) Selected excerpt from Chapter 2 of a book entitled Psychiatric Concepts
(Def.'s Ex. VII); (9) Defendant's CVS patient prescription record covering January 5, 2001 to August 10, 2004 (Def.'s Ex. VIII); (10) Defendant's records from the Rhode Island Department of Corrections Health Services (Def.'s Ex. IX); (11) Selected excerpts from the bookBreak the Bipolar Cycle, by Elizabeth Brondolo, *Page 3 
Ph.D., and Xavier Amador, Ph.D. (Def.'s Ex. X); (12) A Defendant authored list of medications with commentary (Def.'s Ex. XI); (13) An article from The Economist entitled "Who Do You Think You Are?" dated December 23, 2006 (Def.'s Ex. XII);[1] (14) A second excerpt from Chapter 2 of Psychiatric Concepts
(Def.'s Ex. XIII); (15) Copies of 22 C.J.S. CriminalLaw §§ 96-97 (Def.'s Ex. XIV); and (16) Additional records from Fort Devins dated 1980.
After an evaluation of the aforementioned materials, Dr. Bursztajn, a renowned clinical professor of psychiatry at the Harvard Medical School, opined in an "Analysis of Merit" that the Defendant, at the time the criminal activity occurred, suffered from a psychiatric disorder which affected his "judgment and decision-making capacities." (Dr. Bursztajn's "Analysis of Merit" § III.C ¶¶ 1-2.) He further concluded that the Defendant's mental capacity during the time in question was "diminished" due to the Defendant's "sub-therapeutic levels of Depakote,"[2] which was being utilized to treat Defendant's bipolar disorder. Id.
The State articulates, as its bases for objection to the within motion, the following: (1) both a pre-sentence report and private counsel's sentencing memorandum were considered by the Court; (2) Dr. Pogacar's letter of December 4, 2003 (part of Def.'s Ex. V) was provided to the Court; (3) a comprehensive sentencing hearing was conducted on June 15, 2006; (4) the proffered "new" information regarding Defendant's mental and emotional make-up should not serve to alter the sentence or provide a basis for a finding of "diminished mental capacity."
The records of Dr. Pogacar (Def.'s Ex. V) reveal that the doctor and the Defendant commenced a physician-patient relationship on February 5, 2003, with a last record of treatment dated June 24, 2004. These records demonstrate that Dr. Pogacar and Dr. Bursztajn were, in relevant and substantial part, in possession of the same information about the Defendant's *Page 4 
physical and mental history: Dr. Pogacar's initial evaluation reports both the football head injury and accompanying loss of consciousness and the parachuting head injury, also with a loss of consciousness. (See Def.'s Ex. V, Dr. Pogacar's Evaluation at 2 and compare to Dr. Bursztajn's "Analysis of Merit" § III.A ¶¶ 1-2.) Dr. Pogacar's Evaluation also references the Defendant "having 2-3 women at the same time" and desiring "sex [daily] 3 [to] 4 [times]." (See Def.'s Ex. V, Dr. Pogacar's Evaluation at 1 and compare to Dr. Bursztajn's "Analysis of Merit" § III.A ¶ 3.)
Dr. Bursztajn opined that "many of the behaviors that [the Defendant] describes following his concussions, such as hypersexuality and aggression, are consistent with impulsivity and loss of inhibition. These behaviors can be symptomatic of a number of psychiatric disorders, including Bipolar Disorder and Impulse Control Disorder." (Dr. Bursztajn's "Analysis of Merit" § III.A ¶ 4.a) (emphasis added). On the very first day Dr. Pogacar evaluated the Defendant, he described him as exhibiting "Bipolar Disorder Type II" and also noted the history of "multiple head injuries with cerebral concussions." (Def.'s Ex. V, Dr. Pogacar's Initial Evaluation at 4.) The Defendant was prescribed Depakote and continued to be monitored by Dr. Pogacar. Subsequent entries in the records document visits on March 6, 2003, March 19, 2003, April 18, 2003 and June 3, 2003, which suggest that the Defendant continued to take the Depakote as prescribed. On July 31, 2003, Dr. Pogacar reported that the Defendant had stopped taking Depakote because he "believes that it doesn't help him." (Def. Ex. V.) The Defendant also reported that he was in "better control of his temper" and "more aware of his behavior." Id. He described himself as "irritable" but the "same as" he was "when on Depakote." Id. The Defendant also informed the doctor that he was having an affair at the "same time he was saving money to buy an anniversary ring for his wife."Id. In any event, the aforementioned records, as *Page 5 
well as those of subsequent visits, are relied upon by Dr. Pogacar in the findings contained in his December 4, 2003 letter, which thoroughly captures the Defendant's history.
In his "Analysis of Merit," Dr. Bursztajn specifies that his evaluation was focused upon "whether there were mitigating factors not available for consideration at the time of [the Defendant's] sentencing." (Dr. Bursztajn's "Analysis of Merit" § I.) However, Dr. Bursztajn was clearly operating under the assumption that "new information" of a mitigating nature, came to light after the sentencing, which information he describes as "data documenting multiple head traumas and a history of uncontrolled mental illness, raising questions of improper medication and of illness-mediated diminished capacity to adhere to a medication regimen as well as self-medication." Id.
After thoroughly reviewing the submitted records and information, this Court cannot identify any "new" information which would raise a concern of infirmity regarding what Dr. Bursztajn terms the Defendant's "judgment and decision-making capacities." (Dr. Bursztajn's "Analysis of Merit" § III.C ¶¶ 1-2.)
Moreover, this Court was aware of the Defendant's voluntary non-compliance with his medication protocol. Prior to imposing sentence, the Court stated as follows: "It was [the Court's] interpretation and understanding from the records that were furnished to [the Court] that Mr. Lewis had an awareness that he had a problem with depression, was treated at Butler for depression, knew that he needed medications, and despite that awareness did not take his medication." (Tr. 24) (which also references the Defendant's bipolar disorder).
Furthermore, this Court has on numerous occasions interacted with Mr. Lewis during his court appearances. He has been consistently appropriate, alert, and communicative. The Court has further observed nothing in his deportment, affect, or speech which in any way suggests that *Page 6 
his entry into a plea was not a clear-headed and voluntary choice. The Court repeats that the Defendant's criminal activity was the "product of a nefarious and detailed plot" planned with and executed by his co-conspirator.
The evidence unequivocally establishes that the crimes were not committed by an individual whose mental state was impaired or whose capacity was diminished so as to affect culpability.
 CONCLUSION
Based on the foregoing analysis, the Court denies the Defendant's motion to reduce his sentence.
Counsel shall prepare an order in conformance with this Decision.
[1] Reader is directed to http://www.economist.com/surveys for acknowledgements and sources.
[2] Depakote is the brand name for the prescription drug "divalproex sodium." Clinical Pharmacology. http://www.clinicalpharmacology.com. Last visited January 19, 2010.